**BALTODANO & BALTODANO LLP**
Hernaldo J. Baltodano (SBN 222286)
Email: hjb@bbemploymentlaw.com
Erica Flores Baltodano (SBN 222331)
Email: efb@bbemploymentlaw.com
1411 Marsh Street, Suite 102
San Luis Obispo, California 93401
Tel: (805) 322-3412
Fax: (805) 322-3413

**BOREN, OSHER & LUFTMAN LLP**
Paul K. Haines (SBN 248226)
Email: phaines@bollaw.com
Fletcher W. Schmidt (SBN 286462)
Email: fschmidt@bollaw.com
5900 Wilshire Blvd., Suite 920
Los Angeles, California 90036
Tel: (323) 937-9900
Fax: (323) 937-9910

Attorneys for Plaintiff, the Class
And Aggrieved Employees

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE PLANTILLAS, as an individual and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SNAP-ON INCORPORATED, a Delaware Corporation; SNAP-ON LOGISTICS COMPANY, form of entity unknown; SNAP-ON SPECIALTY TOOLS, form of entity unknown; and DOES 1 through 10,<br><br>Defendants. | CASE No. CV13-05153 DDP (VBKx)<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:  Hon. Dean D. Pregerson<br>Date:   May 12, 2014<br>Time:   10:00 a.m.<br>Dept.:  3 |

1

NOTICE IS HEREBY GIVEN that on May 12, 2014, at 10:00 a.m. or as soon thereafter as the matter may be heard in Courtroom 3 of the United States District Court for the Central District of California, located at 312 N. Spring Street, Los Angeles, California 90012-4701, before the Honorable Dean D. Pregerson, Plaintiff Jacqueline Plantillas ("Plaintiff") individually and on behalf of all others similarly situated, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e):

1. Preliminarily certifying the proposed Settlement Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Preliminarily appointing Plaintiff as Class Representative for settlement purposes;

3. Preliminarily appointing Hernaldo J. Baltodano of Baltodano & Baltodano LLP and Paul K. Haines of Boren, Osher & Luftman LLP as Class Counsel for settlement purposes;

4. Preliminarily approving the class action settlement based upon the terms set forth in the Joint Stipulation of Class Settlement and Release ("Settlement Agreement");

5. Scheduling a final fairness hearing to consider final approval of the Settlement Agreement, entry of a proposed final judgment, Plaintiff's counsel's Motion for Reasonable Attorneys' Fees and Costs, and counsel's Motion for the Class Representative's Incentive Payments;

6. Appointing CPT Group, Inc. as the third-party settlement administrator for mailing notices; and

7. Approving the proposed Class Notice and proposed Request for Exclusion Form, and an order that they be disseminated to the proposed Settlement Class as provided in the Settlement Agreement.

This motion is based on this notice of motion, the attached memorandum of points and authorities, the declarations of Hernaldo J. Baltodano and Paul K.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Haines and exhibits attached thereto, the declaration of Julie Green and exhibits attached thereto, the pleadings and other papers filed in this action, and on any further oral or documentary evidence or argument presented at the time of hearing.

Dated: April 14, 2014

Respectfully submitted,

BALTODANO & BALTODANO LLP

By: _____

Hernaldo J. Baltodano, Esq.

Attorneys for Plaintiff, the Class and Aggrieved Employees

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## **TABLE OF CONTENTS**

I. INTRODUCTION ....................................................................................1

II. FACTUAL SUMMARY ........................................................................3

   A. Plaintiff's Claims ...........................................................................3

   B. Snap-on Denies Plaintiff's Claims.................................................4

   C. Procedural History And Discovery Completed ..............................5

III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL ...7

   A. The Settlement Is Fair, Adequate, and Reasonable ......................7

      1. The Strength of Plaintiff's Case .............................................7

      2. Risk, Expense, Complexity, and Duration of Further Litigation ......9

      3. Risk of Maintaining Class Action Status .......................................10

      4. Amount Offered in Settlement Given Realistic Value of Claims ...10

      5. Discovery Completed and the Status of Proceedings ...................13

      6. The Experience and Views of Counsel ..................................13

   B. The Preliminary Approval Standard Is Met...................................14

      1. The Settlement is Within the Range of Possible Approval.............14

      2. The Settlement Resulted from Serious, Informed and Non-Collusive Negotiations .......................................................................15

      3. The Settlement is Devoid of Obvious Deficiencies ......................15

IV. THE SETTLEMENT MERITS CERTIFICATION.........................................18

   A. Rule 23(a)(1) Numerosity Is Satisfied.................................................18

   B. Rule 23(a)(2) Commonality Is Satisfied .................................................18

   C. Rule 23(a)(3) Typicality Is Satisfied .........................................................19

   D. Rule 23(a)(4) Adequacy Is Satisfied .........................................................19

   E. Rule 23(b)(3) Predominance Is Satisfied For Settlement Purposes..........20

V. THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS .............20

VI. CONCLUSION...............................................................................................21

- i -

# <u>TABLE OF AUTHORITIES</u>

**<u>Federal Cases</u>**

*Amchem v. Windsor*
    521 U.S. 591, 623 (1997) ..................................................................20

*Churchill Village, L.L.C. v. General Electric*
    361 F.3d 566, 575 (9th Cir. 2004) ...................................................21

*Class Plaintiff v. Seattle*
    955 F.2d 1268, 1276 (9th Cir. 1992) ..............................................14

*Eisen v. Carlisle & Jacqueline*
    417 U.S. 156 (1974)........................................................................20

*Elliot v. Spherion Pacific Work, LLC*
    572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ..............................8

*Franklin v. Kaypro Corp.*
    884 F.2d 1222, 1225 (9th Cir. 1989) .................................................7

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011, 1020 (9th Cir. 1998) ........................................19, 20

*Ikonen v. Hartz Mountain Corp.*
    122 F.R.D. 258, 262 (S.D. Cal. 1988) ............................................18

*In Re Mego Financial Corp. Securities Litig.*
    213 F.3d 454, 459 (9th Cir. 2000) ..................................................14

*In re Pacific Enterprises Securities Litigation*
    47 F.3d 373, 378 (9th Cir. 1995) ....................................................13

*Leyva v. Medline Industries, Inc.*
    716 F.3d 510, 515 (9th Cir. 2013) ..................................................20

*Morris v. Lifescan, Inc.*
    54 Fed.Appx. 663 (9th Cir. 2003) ..................................................18

*National Rural Tele. Coop. v. DIRECTTV, Inc.,*
    221 F.R.D. 523, 526 (C.D. Cal. 2004)..............................................9

- ii -

*Rodriguez v. West Publishing Corp.*
    563 F.3d 948, 963 (9th Cir. 2003) ...................................................7, 14, 17

*Villacres v. ABM Industries, Inc.*
    384 Fed.Appx. 626 (9th Cir. 2010) ...................................................8


**State Cases**

*Armenta v. Osmose, Inc.*
    135 Cal.App.4th 314, 324 (2005) ...................................................3

*Huntington Memorial Hospital v. Superior Court*
    131 Cal.App.4th 893, 902-903 (2005) ...................................................4

*See's Candy Shops, Inc. v. Superior Court*
    210 Cal.App.4th 889, 901-902 (2012) ...................................................3

*Thurman v. Bayshore Transit Management, Inc.*
    203 Cal.App.4th 1112, 1135 (2012) ...................................................12


**Federal Statutes**

29 Code of Federal Regulations 778.210 ...................................................4

Federal Rules of Civil Procedure 23(e)(2) ...................................................7

29 United States Code § 207(e) ...................................................4


**State Statutes and Rules**

8 California Code of Regulations § 13520 ...................................................8

Business & Professions Code § 17200 ...................................................1

Labor Code § 203 ...................................................4

Labor Code § 226 ...................................................4, 8

Labor Code § 2699(e)(2) ...................................................9

Labor Code § 2802 ...................................................4

- iii -

**Unpublished Cases**

*Alvarez v. Nordstrom, Inc.*

   Case Nos. CV 08-05856-AHM (AJWx), CV 10-04378-AHM (AJWx), 2011
   WL 7982552 at *7
   (C.D. Cal. May 24, 2011) ...................................................................11

*Angeles v. U.S. Airways, Inc.*

   Case No. C 12-05860 CRB, 2013 WL 622032 at *10
   (N.D. Cal. Feb. 19, 2013) ...............................................................5, 12

*Austin v. Amazon.Com, Inc.*

   Case No. C09-1679JLR, 2010 WL 1875811 at *3
   (W.D. Wash. May 10, 2010) .................................................................3

*Chu v. Wells Fargo Investments, LLC*

   Case Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 at *1
   (N.D. Cal. February 16, 2011)...........................................................17

*Eddings v. Health Net, Inc.*

   Case No. CV 10-1744-JST (RZX), 2013 WL 3013867 at *1
   (C.D. Cal. June 13, 2013) ..................................................................18

*Gribble v. Cool Transports Inc.*

   No. CV 06-04863 GAF SHx, 2008 WL 5281665 at *9
   (C.D. Cal. December 15, 2008) ..........................................................13

*In re First Capital Holdings Corp. Financial Products*

   Case No. MDL No. 901, 1992 WL 226321 at *2
   (C.D. Cal. June 10, 1992) ..................................................................15

*In re Portal Software, Inc. Securities Litig.*

   Case No. C-03-5138 VRW, 2007 WL 4171201 at *3
   (N.D. Cal. Nov. 26, 2007) ..................................................................10

*In re Taco Bell Wage and Hour Actions*

   Case No. 1:07-cv-01314-OWW-DLB, 2011 WL 4479730 at *11

(E.D. Cal. Sept. 26, 2011)...........................................................11

*Jaime v. Standard Parking Corp.*

     Case No. CV08-04407 AHM (Rzx)

     (C.D. Cal. June 22, 2011) ...........................................................17

*Lazarin v. Pro Unlimited, Inc.*

     Case No. C11-03609 HRL, 2013 WL 3541217

     (N.D. Cal. July 11, 2013)...........................................................17

*Ramirez v. United Rentals, Inc.*

     Case No. 5:10-cv-04374 EJD, 2013 WL 2646648 at *6

     (N.D. Cal. June 12, 2013) ...........................................................11

*Schiller v. David's Bridal, Inc.*

     Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17

     (E.D. Cal. June 11, 2012) ...........................................................16

*Williams v. Centerplate, Inc.*

     Case No. 11-CV-2159 H-KSC 2013 WL 4525428 at *4

     (S.D. Cal. August 26, 2013) .......................................................17

*Willner v. Manpower Inc.*

     Case No. C 11-02846 JSW, 2012 WL 1570789 at *7

     (N.D. Cal. May 3, 2012)...............................................................9


**<u>Other Sources</u>**

Manual for Complex Litigation § 30.41 (3rd Ed. 1995)...................7, 14

4 Newberg et al., Newberg on Class Actions (4th ed. 2013) § 11:24-25 ...............14

4 Newberg et al., Newberg on Class Actions (4th ed. 2013) §14.6 .......................18

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION.

Plaintiff Jacqueline Plantillas ("Plaintiff"), individually and on behalf of the proposed Settlement Class, requests that this Court preliminarily approve the parties' Joint Stipulation of Class Settlement and Release ("Settlement Agreement"), entered by Plaintiff and Defendants Snap-on Incorporated, and Snap-on Logistics (collectively "Snap-on" or "Defendants").[1]  In this lawsuit, Plaintiff pursued unpaid minimum and overtime wages based on Defendants' alleged unlawful timekeeping practices and also sought derivative penalty claims.[2] The core theory of liability at the heart of Plaintiff's lawsuit was Defendants' one-way time-shaving policy which Plaintiff asserted unilaterally benefitted Defendants by underpaying Defendants' hourly non-exempt employees.

The proposed Settlement Class consists of, "All non-exempt employees of Snap-on, who worked in Defendants' City of Industry ("CDI") and San Jose facilities during the period from July 17, 2009 through the date of preliminary approval, who experienced downward adjustments to their recorded time as a result of rounding of their timekeeping entries."  According to Defendants' records, the Settlement Class presently consists of approximately 250 current and former hourly non-exempt employees.   Although Plaintiff initially brought this action on behalf of a nationwide FLSA opt-in class in addition to the California class, the proposed settlement will impact only the claims of Defendants' non-exempt employees in California.

---

[1] The Settlement Agreement is attached as Exhibit 1 to the Declaration of Hernaldo J. Baltodano.  The proposed Class Notice and the proposed Request for Exclusion Form are attached as Exhibits A and B, respectively, to the Settlement Agreement.

[2] There are six claims pled in the operative Complaint: (1) Failure to pay overtime wages in violation of California law; (2) Failure to pay overtime wages in violation of the Fair Labor Standards Act ("FLSA"); (3) Minimum wage violations; (4) Failure to reimburse employees for necessary expenditures; (5) Waiting time penalties; and (6) Unfair Competition under Business & Professions Code § 17200 *et seq.*

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

This proposed non-reversionary settlement comes to fruition only after several months of robust legal research and analysis, fact investigation, and the exchange and analysis of payroll and timekeeping data for the entire Settlement Class.  On February 4, 2014, the parties mediated this case with Jeffrey Krivis, an experienced wage and hour class action mediator, and ultimately executed a binding memorandum of understanding.  The parties then continued negotiating the finer points of the settlement before finalizing the Settlement Agreement now before the Court for approval.

If this proposed settlement is approved, Defendants will pay a Maximum Settlement Amount ("MSA") of $365,000 dollars to members of the Settlement Class.  This amount is non-reversionary and no Settlement Class members will be required to submit a claim form to participate in the settlement.  After deductions for proposed court-approved Plaintiff's incentive payment, settlement administration costs, attorneys' fees and costs, and payment to the California Labor and Workforce Development Agency ("CLWDA") for civil penalties under PAGA, members of the Settlement Class will receive significant monetary payments.  As detailed below, this settlement provides recovery of greater than 100% of the Settlement Class's reasonably forecasted recovery when considering the litigation risks involved.  The average payment to Settlement Class members is approximately valued at $843.33.  Settlement payments will vary depending on the number of compensable work weeks each class member is credited with from July 17, 2009 through the date of preliminary approval.

Based on the litigation risks involved, Plaintiff submits that the proposed settlement is well within the range of possible approval.  Moreover, the settlement agreement and notice distribution plan result from an informed and thoroughly-vetted analysis of the claims and defenses, as well as the likelihood of obtaining class certification, and extensive non-collusive and arm's length settlement

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1   negotiations by experienced employment counsel.  Therefore, Plaintiff

2   respectfully requests that the Court grant this motion.

3   **II.     FACTUAL SUMMARY.**

4          **A.     Plaintiff's Claims.**

5          Snap-on manufactures various hand tools at two plants in California,

6   located in the City of Industry and San Jose.  At both the City of Industry and San

7   Jose locations, Snap-on maintained a timekeeping policy whereby an employee

8   clocking in to work up to 15 minutes prior to their scheduled start time would only

9   be paid beginning from their scheduled start time.  Plaintiff claimed that as a

10  result of this policy, Snap-on failed to pay hourly non-exempt employees for all

11  hours worked, and that this one-way time-shaving practice resulted in a significant

12  amount of additional underpaid overtime wages in addition to underpaid minimum

13  wages in violation of California law. *See Armenta v. Osmose, Inc.*, 135

14  Cal.App.4th 314, 324 (2005) ("California's labor statutes reflect a strong public

15  policy in favor of full payment of wages for all hours worked."); *See's Candy*

16  *Shops, Inc. v. Superior Court*, 210 Cal.App.4th 889, 901-902 (2012) ("an

17  employer's rounding policy violates the DOL rounding regulation if it

18  'systematically undercompensate[s] employees,' such as where the defendant's

19  rounding policy 'encompasses only rounding down.'")(citations omitted); *Austin*

20  *v. Amazon.Com, Inc.*, Case No. C09-1679JLR, 2010 WL 1875811 at *3 (W.D.

21  Wash. May 10, 2010) ("Contrary to Amazon's arguments, however, the above

22  [Department of Labor] regulation does not give Amazon a blank check to round

23  time in any manner it sees fit.").

24         In addition, Plaintiff claimed that Snap-on provided various forms of

25  bonuses and incentive pay to their hourly non-exempt employees, such as

26  performance bonuses, annual bonuses, and profit-sharing bonuses.  Plaintiff

27  asserted that Snap-on did not lawfully include the value of these bonuses and

28  incentives in non-exempt employees' regular rates of pay, which Plaintiff

3

maintained resulted in a company-wide miscalculation of their overtime rates and a systematic underpayment of overtime wages under California and Federal law. *See Huntington Memorial Hospital v. Superior Court*, 131 Cal.App.4th 893, 902-903 (2005) (payments included in the calculation of the regular rate are generally consistent under state and federal law); 29 U.S.C. § 207(e). Because Snap-on failed to include the value of these bonuses and incentives in the regular rate for overtime purposes, Plaintiff maintained that Snap-on failed to pay all overtime wages to their hourly non-exempt employees.

Plaintiff also claimed that Snap-on made deductions from employees' wages for the cost and maintenance of required company uniforms and tools, in violation of Labor Code § 2802. Because of these predicate violations, Plaintiff maintained, Snap-on failed to comply with their final payment and wage statement obligations, in violation of Labor Code §§ 203 and 226.[3]

### B.   Snap-on Denies Plaintiff's Claims.

Snap-on strenuously denies Plaintiff's claims. Among other things, Snap-on asserts that Snap-on Specialty Tools was not a properly named defendant, since it is not an actual entity. Snap-on also maintains that it properly calculated and paid all required overtime wages, asserting that the allegedly omitted incentive pay was in fact a discretionary bonus calculated as a percentage of each recipient employee's total earnings, including overtime wages, and therefore need not be included in the regular rate for purposes of calculating the overtime rates of pay.[4]

---

[3] Because Plaintiff was terminated from employment in February 2012, Defendants maintained that her claim for civil penalties under PAGA based on the underlying unpaid wage claims was time-barred. Nevertheless, because Defendants never sought dismissal of this claim, and because Plaintiff intended to add a second named Plaintiff who had been terminated within the year preceding the filing of this lawsuit, the parties exchanged information and data in connection with potentially resolving wage statement and PAGA claims. Thus, Plaintiff valued the wage statement and PAGA claims for purposes of mediation and these claims factored significantly into the proposed settlement.

[4] *See* 29 C.F.R. 778.210 (providing that bonuses calculated as a percentage of total earnings may be excluded from inclusion in the regular rate of pay).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Snap-on also maintains that it paid for all hours worked and that its challenged time-shaving practice was not unlawful because employees were instructed not to perform any work prior to their scheduled start time.  Moreover, Snap-on asserts that each Snap-on facility is independently owned and has unique local policies for timekeeping, which purportedly posed obstacles to class certification.

In addition, to the extent that Plaintiff or other members of the Settlement Class received wage statements that were allegedly inaccurate, Snap-on asserts that Plaintiff and the Settlement Class suffered no actual damage or harm as a result. *See, e.g., Angeles v. U.S. Airways, Inc.*, Case No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) ("A plaintiff must adequately plead an injury arising from an employer's failure to provide full and accurate wage statements, and the omission of the required information alone is not sufficient."). With respect to Plaintiff's claim for waiting time penalties, Snap-on alleges that its good-faith belief that its timekeeping policy was lawful precluded the imposition of waiting time penalties since Plaintiff could not prove that Snap-on's alleged failure to pay all final wages at the time of termination was "willful."  For these reasons, Snap-on claims that it did not engage in any unfair business practices and denies liability under PAGA.  Finally, Snap-on argued that Plaintiff's claims were improper for class and/or collective action treatment under Rule 23 of the Federal Rules of Civil Procedure and the FLSA.

## C.    <u>Procedural History And Discovery Completed</u>.

Plaintiff filed her complaint on July 17, 2013 in the United States District Court for the Central District of California.  *See* Docket Entry ("DE") No. 1; Declaration of Hernaldo J. Baltodano ("Baltodano Decl."), ¶ 13.  On September 11, 2013, Defendants filed and served their Answer to Plaintiff's Complaint.  *See* DE No. 8; Baltodano Decl., ¶ 13.  On October 9, 2013, the parties participated in the Rule 26(f) conference of counsel, where counsel for the parties discussed the claims and defenses at issue as well as the possibility of attending mediation.  *See*

DE No. 12; Baltodano Decl., ¶ 13.  On the following day, Plaintiff served each named Defendant with two sets of special interrogatories and one set of requests for production of documents.  Baltodano Decl., ¶ 13.  The parties subsequently reached an agreement to mediate the case before Jeffrey Krivis, an experienced wage and hour class action mediator, and agreed to a stay of further formal discovery pending mediation.  *Id.*  Defendants did, however, produce over 540 pages of policies, personnel files, and wage statements along with timekeeping data for the entire Settlement Class.  *Id.*  In preparation for mediation, Plaintiff conducted a comprehensive analysis of the data, and determined the total number of current and former employees in the putative class, the average rate of pay, and the total number of hours lost due to Snap-on's alleged one-way time-shaving policy.  *Id.*  Plaintiff was also able to determine how Snap-on calculated bonuses and overtime rates of pay.  *Id.*

At mediation, the parties focused their settlement efforts on reaching a resolution that would cover all of Defendants' locations within California, which Defendants contended were the only locations utilizing the challenged time-shaving policy.  Baltodano Decl., ¶ 14.  Ultimately, the parties reached a settlement on behalf of all California class members only and executed a binding memorandum of understanding.  *Id.*  The parties did not reach a settlement with respect to the nationwide FLSA class, and are therefore not moving to certify a nationwide FLSA opt-in class for settlement.  *Id.*  On February 10, 2014, the parties advised the Court that they had reached a resolution.  *See* DE No. 17.  On March 11, 2014, the parties finally executed the proposed Settlement Agreement that Plaintiff now presents to the Court for preliminary approval.  Baltodano Decl., ¶ 14.

///

///

///

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

1  **III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY**
2          **APPROVAL.**

3          It is the policy of the federal courts to encourage settlement. *See Franklin v.*
4  *Kaypro Corp.*, 884 F.2d 1222, 1225 (9th Cir. 1989).  Judicial approval of a class
5  action settlement entails a two-step process: (1) an early (preliminary) review by
6  the Court; and (2) a final review after notice has been distributed to the class
7  members for their comment or objections. *See* Manual for Complex Litigation §
8  30.41 (3rd Ed. 1995).

9          **A.    The Settlement Is Fair, Adequate, and Reasonable.**

10         To receive judicial approval, a proposed class action settlement must be
11 "fair, reasonable, and adequate." *See* Fed. R. Civ. Proc. 23(e)(2).  In making this
12 determination, this Court may consider the following factors: (1) the strength of
13 the plaintiff's case; (2) the risk, expense, complexity, and likely duration of
14 further litigation; (3) the risk of maintaining class action status throughout trial;
15 (4) the amount offered in settlement; (5) the extent of discovery completed and the
16 stage of the proceedings; (6) the experience and views of counsel; (7) the presence
17 of a governmental participant; and (8) the reaction of the class members to the
18 proposed settlement. *See Rodriguez v. West Publishing Corp.,* 563 F.3d 948, 963
19 (9th Cir. 2003).  Plaintiff addresses each relevant factor below.[5]

20         **1.    The Strength of Plaintiff's Case.**

21         Although she steadfastly maintains that her claims are meritorious, Plaintiff
22 acknowledges that Snap-on possessed formidable defenses to liability and
23 certification.  For example, regarding the regular rate miscalculation claim, Snap-
24 on asserts that the only bonuses paid to their hourly non-exempt employees are
25 discretionary, and are furthermore calculated as a percentage of the employee's

26
27 [5] Because there are no government participants in the instant lawsuit, Plaintiff has omitted the
   seventh factor from discussion.  Should the Court grant preliminary approval of the proposed
28 settlement such that notice is given to the Settlement Class members, Plaintiff will address the
   eighth factor in her motion for final approval.

total earnings inclusive of overtime wages, and therefore do not need to be factored into the regular rate for purposes of calculating the overtime rate of pay. Baltodano Decl., ¶ 15.  With respect to Plaintiff's claim that Snap-on failed to pay all minimum wages by improperly truncating hours worked prior to employees' scheduled start times, Snap-on maintains that employees are paid for all hours actually worked, and are instructed to not perform any work prior to their scheduled start time.  *Id.*  Furthermore, Snap-on maintains that because timekeeping policies and practices are maintained locally at each facility, Plaintiff would face an uphill battle for certification.  *Id.*  Regarding the reimbursement claim, Snap-on argued that none of their facilities have required uniforms, but that optional uniforms are available, for which Snap-on deducts subsidized amounts for cleaning and maintenance.  *Id.*

Consequently, Snap-on asserted that it possessed a strong defense to the derivative waiting time penalties because there existed a "good-faith" dispute that any additional minimum or overtime wages were due, thereby precluding the imposition of waiting time penalties.  *See* 8 Cal. Code of Regulations § 13520 (a "good-faith" dispute exists to waiting time penalties "when an employer presents a defense, based in law or fact which, if successful, would preclude any recovery on the part of the employee.  The fact that a defense is ultimately unsuccessful will not preclude a finding that a good faith dispute did exist."); Baltodano Decl., ¶ 16.  Snap-on also maintained that Plaintiff would not be able to prove that all putative class members experienced "injury" as required under Labor Code § 226.  *See, e.g., Villacres v. ABM Industries, Inc.*, 384 Fed.Appx. 626 (9th Cir. 2010) (granting summary judgment for employer on Labor Code § 226 claim based on lack of injury); Baltodano Decl., ¶ 16.

Moreover, since Plaintiff's potential claims for civil penalties under PAGA would be wholly derivative of the underlying overtime and minimum wage claims, Snap-on asserted that the PAGA claims would rise or fall with such

8

claims. *See, e.g., Elliot v. Spherion Pacific Work, LLC*, 572 F.Supp.2d 1169, 1181-82 (C.D. Cal. 2008) ("Plaintiff's claim under the Private Attorneys General Act is wholly dependent upon her other claims.  Because all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim."); Baltodano Decl., ¶ 16.  Snap-on also asserted that any civil penalties would be unconstitutional because they are confiscatory since the penalties sought are grossly disproportionate to the actual amount of alleged overtime wages owed. *See, e.g., Willner v. Manpower Inc.*, Case No. C 11-02846 JSW, 2012 WL 1570789 at *7 (N.D. Cal. May 3, 2012) ("The Court retains discretion over awards under a PAGA claim and may 'award a lesser amount than the maximum civil penalty amount specified [under PAGA] if, based on the facts and circumstances of the particular case, to do otherwise would result in an award that is unjust, arbitrary and oppressive, or confiscatory.'") (citing Cal. Labor Code § 2699(e)(2));  Baltodano Decl., ¶ 16.

In short, Plaintiff's ability to certify, and prevail on her claims was far from guaranteed.  Indeed, "[i]n most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *National Rural Tele. Coop. v. DIRECTTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) (internal quotations omitted).  Thus, this factor supports preliminary approval.

## 2.   **Risk, Expense, Complexity, and Duration of Further Litigation.**

This factor also weighs in favor of preliminary approval.  Although the parties initiated formal discovery and engaged in an extensive amount of informal discovery and data analysis, the parties had not yet completed formal discovery at the time of mediation.  Baltodano Decl., ¶ 17.  Plaintiff intended to depose Snap-on's FRCP 30(b)(6) witnesses on all topics related to her claims if mediation proved unsuccessful. *Id.*  Snap-on also planned to move for summary adjudication on all or some of the claims. *Id.*  Moreover, preparation for class

9

certification and trial remained for the parties as well as the prospect of appeals in the wake of a disputed class certification ruling for Plaintiff and/or adverse summary adjudication ruling.  *Id.*  As a result, the parties stood to incur considerably more attorneys' fees and costs through trial.  *Id.*  This settlement avoids those risks and the accompanying expense. *See, e.g., In re Portal Software, Inc. Securities Litig.*, Case No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D. Cal. Nov. 26, 2007) (noting that the "inherent risks of proceeding to summary judgment, trial and appeal also support the settlement").  Thus, this factor favors preliminary approval.

### 3.   Risk of Maintaining Class Action Status.

Plaintiff had not yet filed her motion for class certification when the parties reached this proposed class-wide resolution.  Had the Court certified any claims, Snap-on would move to decertify the claims.  Baltodano Decl., ¶ 17.  Absent settlement, there was a risk that there would not be a certified class at the time of trial.  Thus, this factor, too, supports preliminary approval of the settlement.

### 4.   Amount Offered in Settlement Given Realistic Value of Claims.

As detailed immediately below, this proposed settlement provides an excellent monetary recovery for the Settlement Class in the face of hotly disputed claims.  Thus, preliminary approval is appropriate.

With respect to the minimum wage and overtime claims based on Snap-on allegedly truncating hours worked prior to the scheduled start times of their shifts, Plaintiff's analysis of the available data reflected that members of the putative class were deprived of a total of approximately 9,585 hours over the course of the entire putative class period.  Baltodano Decl., ¶ 18.  Because Snap-on's challenged timekeeping practice implicated both unpaid minimum and overtime wages, Plaintiff analyzed the data under a two-tiered approach to come up with a range of Snap-on's total potential liability.  *Id.*  Based on an average rate of pay of

$16.81, Plaintiff calculated that if all of the truncated time resulted solely in unpaid minimum wages, Snap-on would face a maximum liability of $322,248 (9,585 total hours * $16.81 = $161,124, plus an additional $161,124 as liquidated damages pursuant to Labor Code § 1194.2).  *Id.*  Alternatively, if all the truncated time resulted in unpaid overtime wages, Snap-on would face a maximum liability of $290,080 (9,585 total hours * $25.22 OT rate, plus interest at 20%).  *Id.* Therefore, Plaintiff estimated that Snap-on's exposure fell somewhere between $290,080 and $322,248.  *Id.*  Plaintiff then discounted this amount by 50% for a risk of non-certification and by an additional 50% for a risk of being unsuccessful on the merits to arrive at an estimated range of **$72,520** to **$80,562**.  *Id.  See, e.g., Ramirez v. United Rentals, Inc.*, Case No. 5:10-cv-04374 EJD, 2013 WL 2646648 at *6 (N.D. Cal. June 12, 2013) (denying certification of pre-shift truncation claim).

        With respect to the waiting time penalty claim, Snap-on's records showed that there were approximately 57 former non-exempt employees in the putative class who could potentially claim waiting time penalties.  Baltodano Decl., ¶ 19. Therefore, Plaintiff estimated Snap-on's maximum potential waiting time penalty exposure at $229,961 (57 separated employees * $4,034.40 average waiting time penalty).  *Id.*  However, based on Snap-on's potential defenses (*see* Sections II(B) & III(A)(1), *supra*), Plaintiff discounted the value of the waiting time penalty claim by 50% in the event of an adverse certification ruling and further discounted the claim by 50% to account for an adverse merits ruling, to arrive at **$57,490**.  *Id.  See, e.g., In re Taco Bell Wage and Hour Actions*, Case No. 1:07-cv-01314-OWW-DLB, 2011 WL 4479730 at *11 (E.D. Cal. Sept. 26, 2011) (denying certification of waiting time claim based on predominance of individual inquiries as to willfulness); *Alvarez v. Nordstrom, Inc.*, Case Nos. CV 08-05856-AHM (AJWx), CV 10-04378-AHM (AJWx), 2011 WL 7982552 at *7 (C.D. Cal. May 24, 2011) (denying certification on same grounds).

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

With respect to wage statement penalties, Snap-on's records indicated that there were 131 non-exempt employees during the applicable statute of limitations. Baltodano Decl., ¶ 20.  Plaintiff assumed for purposes of settlement, that each employee would be able to recover the maximum $4,000 in wage statement penalties since there were more than 41 pay periods at issue.  *Id.*  Thus, Plaintiff estimated the potential wage statement penalties at $524,000 (131 non-exempt employees * $4,000).  *Id.*  However, again based on Snap-on's defenses to certification and the merits, Plaintiff discounted the value of the wage statement penalty claim by 50% for a risk of an adverse certification ruling and an additional 50% to account for an adverse merits ruling, for a projected total of **$131,000**.  *Id. See, e.g., Angeles v. U.S. Airways, Inc.*, No. C 12-05860 CRB, 2013 WL 622032 at *10 (N.D. Cal. Feb. 19, 2013) (dismissing wage statement claim for lack of injury).

Finally, with respect to PAGA Penalties, Plaintiff estimated a total PAGA exposure of $1,087,300 for PAGA penalties for the entire combined class. Baltodano Decl., ¶ 21.  Since only 25% of this total would go to the aggrieved employees, Plaintiff used $271,825 and discounted that figure by 50% for a risk of losing on the merits and an additional 50% for the risk of the Court reducing penalties, to arrive at a projected total of **$67,956**.  *Id.  See, e.g., Thurman v. Bayshore Transit Management, Inc.*, 203 Cal.App.4th 1112, 1135 (2012) (affirming trial court's finding that awarding the maximum PAGA penalties would be unjust).

Using these estimated damage figures, Plaintiff estimated that the realistic total recovery for the Class could be **$328,966** to **$337,008** after discounting the claims for non-certification and/or outright dismissal as explained above.[6]

---

[6] After analyzing the payroll data disclosed by Defendants through informal discovery, Plaintiff determined that Snap-on's bonuses were indeed calculated as a percentage of gross earnings, inclusive of overtime wages, and therefore did not result in a miscalculation of the regular rate of pay for overtime purposes.  Baltodano Decl., ¶ 22.  Therefore, Plaintiff did not value her

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Baltodano Decl., ¶ 23.  The proposed settlement of $365,000 therefore represents all of Plaintiff's reasonably forecasted recovery given the merits and certification litigation risks involved.  *Id.*  Therefore, the proposed settlement is within the realm of being fair, reasonable, and adequate.

### 5.    Discovery Completed and the Status of Proceedings.

The parties engaged in a significant amount of informal class-wide discovery and data analysis.  *See* Baltodano Decl., ¶ 13.  Not only did Defendants produce over 540 pages of policies regarding employee hours, work schedules, overtime practices, and uniforms, along with a sampling of wage statements, Defendants also provided timekeeping data for the entire Settlement Class, which was review and analysed by a third-party consultant.  *See id.*  It was only after the exchange and analysis of a significant amount of data and information that the parties participated in mediation and ultimately reached this proposed settlement.  *See* Baltodano Decl., ¶¶ 13-14.  Thus, this factor supports preliminary approval.

### 6.    The Experience and Views of Counsel.

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 378 (9th Cir. 1995).  Here, Plaintiff is represented by competent and experienced wage and hour class action counsel who pressed Plaintiff's claims forward against a large employer represented by Sheppard Mullin, a respected international law firm. *See* Baltodano Decl., ¶¶ 1-12; Declaration of Paul K. Haines ("Haines Decl."), ¶¶ 1-7.  Therefore, this factor strongly supports preliminary approval. *See, e.g., Gribble v. Cool Transports Inc.*, No. CV 06-04863 GAF SHx, 2008 WL 5281665 at *9 (C.D.

---

regular rate miscalculation claim for purposes of settlement.  *Id.*  Regarding Plaintiff's reimbursement claim, documents and information disclosed through informal discovery confirmed that no non-exempt employees were required to purchase uniforms from Snap-on, and that any deductions made for cleaning or maintenance of uniforms had been voluntarily elected by the employee.  *Id.*

13

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

Cal. December 15, 2008) ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

### B.   The Preliminary Approval Standard Is Met.

At this stage, the Court can grant preliminary approval of the settlement and direct that notice be given if the proposed settlement (1) falls within the range of possible approval; (2) appears to be the product of serious, informed and non-collusive negotiations; and (3) has no obvious deficiencies. *See* Manual for Complex Litigation (3d ed. 1995) § 30.41; 4 Newberg et al., Newberg on Class Actions (4th ed. 2013) § 11:24-25.   The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *See Class Plaintiff v. Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992). These criteria are met here.

### 1.   The Settlement is Within the Range of Possible Approval.

As detailed above, the proposed settlement reflects all of the estimated recovery that the Settlement Class could reasonably expect in light of the litigation risks to certifying any classes and ultimately prevailing at trial.  Thus, Plaintiff submits that the proposed settlement is within the range of possible approval, such that notice should be provided to members of the Settlement Class so that they can consider the settlement. *See In Re Mego Financial Corp. Securities Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("the [s]ettlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate"); *Rodriguez*, *supra*, 563 F.3d at 964 (approving settlement where settlement represented approximately 30% of the damages estimated by the class expert).  The Court will have the opportunity to again assess the reasonableness of the settlement after the Settlement Class has had the opportunity to opt-out or object.

2.      **The Settlement Resulted from Serious, Informed and Non-Collusive Negotiations.**

This proposed settlement is the result of adversarial litigation and extensive arm's length negotiations by counsel and is, therefore, entitled to an initial presumption of fairness. *See In re First Capital Holdings Corp. Financial Products*, Case No. MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10, 1992) ("Approval of the settlement is discretionary with the court, but there is typically an initial presumption of fairness where the settlement was negotiated at arm's length."). As discussed above, Plaintiff thoroughly vetted the claims at issue, conducted extensive fact investigation and legal research and analysis, reviewed and analyzed all class member timekeeping and payroll data, and retained a statistical economist to analyze the timekeeping data to arrive at an estimated damages figure. *See* Baltodano Decl., ¶ 13. The parties reached this settlement only after mediating with Jeffrey Krivis, an experienced wage and hour class action mediator. *Id.* The parties each supplied Mr. Krivis with detailed mediation briefs outlining their views of the strengths and weaknesses of each claim and defense. *Id.* Plaintiff's mediation brief included detailed calculations of the damages she would expect the class to be awarded were she to prevail on each claim. *Id.* Negotiations continued for more than a month, even after the parties had come to an initial agreement, as both sides continued to negotiate finer points of the proposed settlement. Baltodano Decl., ¶ 14. Therefore, this factor also supports preliminary approval.

3.      **The Settlement is Devoid of Obvious Deficiencies.**

If the Court preliminarily approves this settlement, Defendants will pay a MSA of $365,000 dollars which shall be distributed to the Settlement Class members on a non-reversionary basis. Notably, members of the Settlement Class will not need to submit claim forms in order to reap the financial rewards of this

proposed settlement.  The principal terms of the proposed settlement agreement are summarized below:

| | |
|---|---|
| Maximum Settlement Amount: | $365,000 |
| Minus Court-approved attorneys' fees: | $121,666.67 |
| Minus Court-approved costs: | $12,500 |
| Minus Court-approved incentive payment: | $7,500 |
| Minus PAGA settlement allocation: | $2,500 |
| Minus settlement administration costs: | $10,000 |
| Net Settlement Amount ("NSA"): | **$210,833.33** |

After deducting amounts for court-approved Plaintiff's incentive payment, costs of settlement administration, attorneys' fees and costs, and the PAGA payment to the CLWDA, the settlement requires Defendants to pay a NSA of $210,833.33 to all members of the Settlement Class who do not affirmatively opt-out of the settlement.  Baltodano Decl., ¶ 24.  Settlement Class members will have 180 days from the mailing of their settlement shares to cash their checks.  *Id.*  Any sums remaining uncashed after the 180 day deadline will be forwarded by the Settlement Administrator to the California Industrial Relations Unclaimed Wages Fund.  *Id.*

The NSA will be distributed to the Settlement Class members based on each employee's number of workweeks worked during the putative class period. Baltodano Decl., ¶ 25.  The average settlement payment is estimated at $843.33, and will vary depending on the number of workweeks the Settlement Class member is credited with.[7]  *Id.*  This average recovery per class member is substantial. *See, e.g., Schiller v. David's Bridal, Inc.*, Case No. 1:10-cv-00616-AWI-SKO, 2012 WL 2117001 at *17 (E.D. Cal. June 11, 2012) ("Plaintiff notes

---

[7] For tax purposes, the settlement shares will be treated as 1/3 wages, for which an IRS Form W-2 will be issued, and 1/3 penalties and 1/3 interest, for which IRS Form 1099s will be issued. Haines Decl., ¶ 8.  The Settlement Agreement inadvertently referred to the allocation as 80% wages and 20% interest and penalties.  *Id.*  Attached to the Declaration of Paul K. Haines as Exhibit A is a true and correct copy of an e-mail between counsels for the parties confirming that the agreed upon allocation will be 1/3 wages, 1/3 penalties and 1/3 interest.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

that Class Members will receive an average of approximately $198.70, with the highest payment to a Class Member being $695.78.  Plaintiff contends that this is a substantial recovery where Defendant asserted compelling defenses to liability; Plaintiff also notes several similar actions where the gross recoveries per class member were less than $90 . . . Overall, the Court finds that the results achieved are good"); *Jaime v. Standard Parking Corp.*, Case No. CV08-04407 AHM (Rzx) (C.D. Cal. June 22, 2011) (approving class action settlement based on average settlement class member recovery of $462.22); *Williams v. Centerplate, Inc.*, Case No. 11-CV-2159 H-KSC 2013 WL 4525428 at *4 (S.D. Cal. August 26, 2013) (approving class action settlement where average recovery for each class member was approximately $108).

   In addition, the parties have agreed to designate $2,500 of the MSA for PAGA penalties, which will be paid to the CLWDA, which is appropriate. *See, e.g.*, *Chu v. Wells Fargo Investments, LLC*, Case Nos. C 05-4526 MHP, C 06-7924 MHP, 2011 WL 672645 at *1 (N.D. Cal. February 16, 2011) (approving PAGA payment of $7,500 to the CLWDA out of $6.9 million common-fund settlement); *Lazarin v. Pro Unlimited, Inc.*, Case No. C11-03609 HRL, 2013 WL 3541217 (N.D. Cal. July 11, 2013) (approving PAGA payment of $7,500 to the CLWDA out of $1.25 million common-fund settlement); Baltodano Decl., ¶ 24.

   Moreover, the proposed incentive payment of $7,500 to Plaintiff does not bestow preferential treatment.[8]  Proposed Class Counsel will also file a separate

---

[8] As will be fully briefed at the time of moving for final approval, Plaintiff's requested incentive payment is intended to recognize the substantial time and effort that Plaintiff expended on behalf of the Settlement Class. *See Rodriguez, supra*, 563 F.3d at 958 ("Incentive awards are fairly typical in class action cases … and are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action.").  Here, Plaintiff attended numerous in-person and telephonic meetings with Plaintiff's Counsel, and provided invaluable insight and data regarding Defendants' scheduling, timekeeping and wage calculation practices. *See* Baltodano Decl., ¶ 12.  Moreover, Plaintiff agreed to a broader release of all known and unknown claims including claims which are not wage and hour related.  *Id.*

17

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

motion for approval of reasonable attorneys' fees not to exceed $210,833.33 (equal to 33 and 1/3% of the MSA) for all past and future attorneys' fees necessary to prosecute, settle and administer the litigation and this proposed settlement, and file a separate motion for reasonable, verified litigation costs not to exceed $12,500.[9]  Because the proposed settlement is devoid of obvious deficiencies, this final factor also supports preliminary approval.

## IV.    THE SETTLEMENT MERITS CERTIFICATION.

### A.    Rule 23(a)(1) Numerosity Is Satisfied.

Numerosity is satisfied because there are approximately 250 current and former non-exempt employees in the proposed Settlement Class. *See Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988) (holding that classes of 40 or more members satisfy numerosity); Baltodano Decl., ¶ 14.

### B.    Rule 23(a)(2) Commonality Is Satisfied.

Plaintiff maintains that the proposed Settlement Class satisfies commonality because there are common questions of fact and law arising from Plaintiff and the proposed Settlement Class members' employment with Defendants, such as Defendants' allegedly unlawful timekeeping policy and practices and Defendant's resultant violations for waiting time, wage statement and PAGA penalties – all of which Plaintiff contends arise from a common core of salient facts. *See, e.g., Eddings v. Health Net, Inc.*, Case No. CV 10-1744-JST (RZX), 2013 WL 3013867 at *1 (C.D. Cal. June 13, 2013) (certifying class "based solely on Defendants' timekeeping and rounding policies").

---

[9] Requests for attorneys' fees amounting to 33 and 1/3% of a common fund are commonly approved in wage and hour class action settlements. *See, e.g., Morris v. Lifescan, Inc.*, 54 Fed.Appx. 663 (9th Cir. 2003) (affirming a 33% award); 4 Newberg et al., Newberg on Class Actions (4th ed. 2013) §14.6 ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery").

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

### C. Rule 23(a)(3) Typicality Is Satisfied.

Here, the claims of Plaintiff are typical of those held by other non-exempt employees in California.  Plaintiff was employed by Snap-on as an hourly non-exempt employee from December 2010 to February 2012, and had an hourly base rate of pay of $9.27 at the time of her separation.  Baltodano Decl., ¶ 12.   Plaintiff performed work prior to her scheduled start time for which she received no compensation, and consequently received inaccurate wage statements and did not receive all wages due at the time of her separation from employment.  *Id.* According to the Ninth Circuit, "[u]nder [Rule 23(a)(3)'s] permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  Because the proposed Settlement Class consists only of other non-exempt employees in California, and because Plaintiff's claims stem from Defendants' policies and practices regarding timekeeping, provision of wage statements, and the payment of final wages, typicality is satisfied.

### D. Rule 23(a)(4) Adequacy Is Satisfied.

Plaintiff is also adequate as a class representative under Rule 23(a)(4).  To satisfy this requirement, Plaintiff and her counsel must not have conflicts of interest with the proposed class, and must vigorously prosecute the action on behalf of the class. *See Hanlon*, *supra*, 150 F.3d at 1020.  Here, there is no conflict of interest between Plaintiff and the proposed Settlement Class consisting of other non-exempt employees in California.  As an hourly non-exempt employee, Plaintiff pressed forward claims for unpaid wages and related penalties resulting from Defendants' alleged unlawful timekeeping policies and practices.  As detailed above, the proposed settlement reflects a substantial recovery in light of the litigation risks.  Given the relatively small amounts at issue, Plaintiff asserts that it is unlikely that any class member, especially a current employee, would have pursued these claims against Defendants

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL

individually. *See, e.g., Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) ("In light of the small size of the putative class members' potential individual monetary recovery, class certification may be the only feasible means for them to adjudicate their claims.  Thus, class certification is also the superior method of adjudication.").  Finally, Plaintiff's counsel diligently and aggressively litigated this case, undertook an extensive analysis of the claims and potential damages, and there are no conflicts with the Settlement Class members.  As set forth in the concurrently filed Declarations of Hernaldo J. Baltodano and Paul K. Haines, Plaintiff's counsel are adequate to represent the proposed Settlement Class given their qualifications, skills, and experience in these types of cases. *See* Baltodano Decl., ¶¶ 1-11; Haines Decl., ¶¶ 1-7.

### E.      Rule 23(b)(3) Predominance Is Satisfied For Settlement Purposes.

Predominance tests "whether the proposed classes are sufficiently cohesive to warrant adjudication by [class action] representation." *See Amchem v. Windsor*, 521 U.S. 591, 623 (1997).  Because Plaintiff seeks certification of a Settlement Class, however, manageability of trial need not be considered. *See Id.* at 620.   Nevertheless, as a full-time hourly non-exempt employee who was allegedly deprived of all overtime and minimum wages, in addition to being subject to Defendants' wage statement and final payment practices, the proposed Settlement Class is "sufficiently cohesive" since a "common nucleus of facts" and "potential legal remedies" predominate. *See Hanlon*, *supra*, 150 F.3d at 1022.  Plaintiff asserts that this common nucleus of facts centers on Defendants' allegedly unlawful timekeeping practices, which predominates over individual questions.

## V.      THE PROPOSED NOTICE PROCESS SATISFIES DUE PROCESS.

Due process requires that notice be provided to class members by the best reasonable method available. *See Eisen v. Carlisle & Jacqueline*, 417 U.S. 156

1  (1974).  Notice is satisfactory if it "generally describes the terms of the settlement
2  in sufficient detail to alert those with adverse viewpoints to investigate and to
3  come forward and be heard." *See Churchill Village, L.L.C. v. General Electric,*
4  361 F.3d 566, 575 (9th Cir. 2004).  Here, Plaintiff proposes that the settlement be
5  administered by CPT Group, Inc., an experienced class action settlement
6  administrator, who will mail the proposed Class Notice and Request for Exclusion
7  Forms to the settlement class.  *See* Declaration of Julie Green and attached
8  exhibits.  The proposed Class Notice advises class members of the key terms of
9  the settlement and uniform 45-day deadline to opt-out or file an objection to the
10  settlement, provides a summary of the alleged claims, explains the recovery
11  formula and expected recovery amount for each Settlement Class member,
12  provides contact information for Class Counsel, and notifies them of the date for
13  the final approval hearing.  *See* Baltodano Decl., Ex. 1.
14  **VI.**   **CONCLUSION.**
15     Based on these reasons, Plaintiff respectfully requests that the Court grant
16  preliminary approval of this class action settlement.
17
18  Dated:  April 14, 2014                     Respectfully submitted,
                                               BALTODANO & BALTODANO LLP
19
20                          By:    _____
21                                 Hernaldo J. Baltodano, Esq.
22                                 Attorneys for Plaintiff, the Class and
                                   Aggrieved Employees
23
24
25
26
27
28

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL